IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Michael B. SANDY, Attorney at Law.

Supreme Court

*No. 97–0623–D. Filed April 16, 1997.*

(Also reported in 561 N.W.2d 327.)

¶ 1. PER CURIAM. We review the stipulation filed by the Board of Attorneys Professional Responsibility (Board) pursuant to SCR 21.09(3m)[1] in which Attorney Michael B. Sandy stipulated to facts establishing his professional misconduct in several matters. The parties also stipulated to the violations of the Rules of Professional Conduct for Attorneys caused by that conduct and to a two-year license suspension, consecutive to the license suspension to which Attorney Sandy's license is currently subject, as discipline. The misconduct concerns Attorney Sandy's neglect of several client matters to which he was appointed by the State Public Defender (SPD), his neglect of other client matters, his failure to deposit into a trust account funds to which an investigator he had hired was entitled and to notify the investigator of his receipt of those funds and promptly deliver them to her, misrepresentation and dishonesty in statements to the SPD regarding the investigator's bill for services, making a false statement to a court and to his client regarding action he had taken on his client's behalf, failing to send client files to successor counsel, and not cooperat-

---

[1] SCR 21.09 provides, in pertinent part:

**Procedure.**

(3m) The board may file with a complaint a stipulation by the board and the respondent attorney to the facts, conclusions of law and discipline to be imposed. The supreme court may consider the complaint and stipulation without appointing a referee. If the supreme court approves the stipulation, it shall adopt the stipulated facts and conclusions of law and impose the stipulated discipline. If the supreme court rejects the stipulation, a referee shall be appointed pursuant to sub. (4) and the matter shall proceed pursuant to SCR chapter 22. A stipulation that is rejected has no evidentiary value and is without prejudice to the respondent's defense of the proceeding or the board's prosecution of the complaint.

ing with the Board's investigation of these and other matters.

¶ 2. We adopt the parties' stipulation of facts establishing that misconduct and the conclusions of law in respect to the rules it violated. We determine that the two-year license suspension to which the parties stipulated is appropriate discipline to impose for Attorney Sandy's numerous acts of professional misconduct in the course of his representation of clients, his handling of funds belonging to another, and his lack of cooperation with the court's disciplinary process.

¶ 3. Attorney Sandy was admitted to the practice of law in Wisconsin in 1989 and practiced in Milwaukee. The court suspended his license for one year, commencing June 3, 1996, as discipline for attempting to represent a person in a matter adverse to a client he was representing in a criminal matter, gaining access to a minor's confidential children's court file without court authorization by misrepresenting that he was the minor's attorney, misrepresenting to the court the source of his information regarding the minor's prior sexual assault allegations, failing to keep a client reasonably informed of the status of his case and refusing to take delivery of the client's certified letter, and using cocaine with a client. In addition, the court imposed conditions requiring Attorney Sandy to submit to random drug testing for two years. *In re Disciplinary Proceedings Against Sandy*, 200 Wis. 2d 529, 546 N.W.2d 876.

¶ 4. The misconduct to which the parties stipulated is the following. In March, 1995, when Attorney Sandy's client was released on bond on a criminal charge with the condition that he be monitored by electronic bracelet, the client told him he could not pay the cost of that monitoring and asked him to prepare the

377

necessary form to have that cost waived. Attorney Sandy told the client he would do so but never did, with the result that the client was assessed that cost. When he failed to return any of the client's numerous phone calls, the client sought new counsel. Attorney Sandy's failure to act with reasonable diligence and promptness in representing this client violated SCR 20:1.3.[2]

¶ 5. A second matter concerned Attorney Sandy's representation of a client in an appeal from a criminal conviction, for which he was appointed by the SPD in February, 1991. Without consulting the client, Attorney Sandy notified the SPD that no court action was taken because there was no merit to any postconviction proceeding and the client agreed to have the case closed. Soon thereafter, the client wrote Attorney Sandy that, although success seemed unlikely, he wanted to pursue a sentence modification. The client then filed a motion pro se for an extension of time to file a notice of appeal, asserting that Attorney Sandy had not responded to his attempts to contact him.

¶ 6. The Court of Appeals held the client's motion in abeyance and ordered Attorney Sandy to file a response. In that response, Attorney Sandy stated that he understood the client had agreed to his closing the file. The client responded to a subsequent Court of Appeals order that he wanted Attorney Sandy to assist him in filing a sentence modification motion. The Court of Appeals ordered Attorney Sandy to remain counsel of record and take appropriate steps to pursue a post-conviction motion for sentence modification. The SPD wrote Attorney Sandy that he should file any motion he

---

[2] SCR 20:1.3 provides:

**Diligence**

A lawyer shall act with reasonable diligence and promptness in representing a client.

378

believed had arguable merit or, if he found none, he should file a no merit report. Attorney Sandy took no action and did not respond to numerous letters from the client over the next five years.

¶ 7. The client ultimately wrote the SPD in March, 1996 concerning Attorney Sandy's failure to act, and other counsel was assigned to represent him. The Court of Appeals then dismissed Attorney Sandy as appellate counsel, imposed a $500 penalty on him for failing to comply with its orders, and extended the time for the client's new counsel to file a notice of appeal or a no merit report. When Attorney Sandy failed to pay the penalty timely, the Court of Appeals found him in contempt, and Attorney Sandy paid the penalty within the time provided for purging the contempt. Attorney Sandy's failure to pursue or file a request for sentence modification or a no merit report and his failure to take timely action in accordance with the Court of Appeals orders violated SCR 20:1.3.

¶ 8. In a third matter, Attorney Sandy sent to the SPD for payment a bill for services of a private investigator he had hired in the spring of 1995 in a client's criminal matter. The SPD remitted payment to Attorney Sandy of his attorney fees and the $1107 investigator fee September 21, 1995, and Attorney Sandy deposited the entire payment into his personal bank account, not into a trust account. Attorney Sandy told the investigator he had received payment of her bill and would send her a check immediately, but when the investigator received no payment, she began telephoning him, leaving numerous messages on his answering machine. Attorney Sandy did not respond to any of her calls.

¶ 9. On October 16, 1995, the Internal Revenue Service levied against Attorney Sandy's personal bank

account, which included the funds belonging to the investigator. When the investigator again asked him for payment, Attorney Sandy sent her a check for $100, informed her of the IRS levy, and promised to pay her the remaining amount in full as soon as he was able. Attorney Sandy did not respond to the investigator's subsequent requests over the next six weeks that he make regular payments on the amount owing and that he verify the tax levy.

¶ 10. In January, 1996, Attorney Sandy sent the SPD a check for the remaining amount to which the investigator was entitled, asking it to make that payment to her because he "in good conscience" could not do so because he believed her bill was inflated and exceeded the amount the SPD had authorized. Prior to that letter, Attorney Sandy never had questioned any of the amounts specified in the investigator's bills during his conversations, correspondence, and dealings with her, nor had he indicated that she had not earned payment in full of the services she asserted.

¶ 11. Attorney Sandy's deposit and retention of the payment of the investigator's services in his personal checking account violated the trust account rules, SCR 20:1.15(a).[3] In addition, his failure to notify

---

[3] SCR 20:1.15 provides, in pertinent part:

**Safekeeping property**

(a) A lawyer shall hold in trust, separate from the lawyer's own property, property of clients or third persons that is in the lawyer's possession in connection with a representation. All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c) maintained in a bank, trust company, credit union or savings and loan association authorized to do business and located in Wisconsin, which account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar

the investigator in writing of his receipt of funds belonging to her and promptly deliver them to her violated SCR 20:1.15(b).[4] Finally, his statement to the SPD that her bill for services was inflated constituted dishonesty and misrepresentation, in violation of SCR 20:8.4(c).[5]

¶ 12. In a fourth matter, even though the client he was appointed by the SPD to represent on a criminal charge in January, 1995 was incarcerated as a result of a prior conviction and despite several attempts by that client to contact him, Attorney Sandy did not communicate with the client or take any action on the client's behalf between the time of his appointment and the following June. After the client's trial was adjourned because the client had not been in contact with his appointed counsel, Attorney Sandy met with the client

---

import, and no funds belonging to the lawyer or law firm except funds reasonably sufficient to pay account service charges may be deposited in such an account. . . .

[4] SCR 20:1.15 provides, in pertinent part:

**Safekeeping property**

. . .

(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall render a full accounting regarding such property.

[5] SCR 20:8.4 provides, in pertinent part:

**Misconduct**

It is professional misconduct for a lawyer to:

. . .

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

at the end of June, 1995, and recommended that the client plead guilty. Attorney Sandy then had no further contact with the client during that summer; he did not respond to the client's letters asking for copies of any motions that had been filed and expressing concern about how the case was to be resolved.

¶ 13. When the trial was adjourned again at the end of October, 1995, Attorney Sandy tried to convince his client to plead guilty. When the client would not agree to do so because he claimed innocence, Attorney Sandy said he would file discovery motions and a motion for speedy trial. Two days later, he wrote the client confirming the new trial date, said he had filed the discovery demand and pretrial motions with the court, but advised the client that it would not be wise to file a speedy trial demand. Nonetheless, the client wrote Attorney Sandy in November, 1995 reiterating his request for a speedy trial motion, as well as copies of various charging documents. Attorney Sandy did not respond to that letter or file a speedy trial demand. The client then filed a pro se motion for a speedy trial.

¶ 14. At the end of January, 1996, the client wrote Attorney Sandy that he had not received a response to his earlier letter and asked him to prepare a motion to dismiss the action on the ground that his right to a speedy trial had been violated. Attorney Sandy did not file that motion, and the matter went to trial February 5, 1996. On the morning of trial, Attorney Sandy approached the holding cell next to the courtroom where his client was being held to discuss the case, but when the client refused to do so because six other inmates were in that cell with him, Attorney Sandy shouted an obscenity to him.

¶ 15. At the client's sentencing following conviction, Attorney Sandy told the court he had attempted

unsuccessfully to obtain a progress report concerning his client's conduct from the institution where the client had been incarcerated. He said he did not want the sentencing hearing adjourned for failure to have that report but hoped the court would accept his representation that the social worker told him his client's progress was "exemplary." The court accepted Attorney Sandy's representation as an officer of the court. Contrary to his assertions, Attorney Sandy had not requested a progress report from the prison. Thereafter, Attorney Sandy did not comply with two requests from successor counsel appointed by the SPD to forward the client's file.

¶ 16. Attorney Sandy's failure to meet with the client or take any action for six months following his appointment and his failure to seek a progress report from the prison violated SCR 20:1.3. His failure to communicate with the client and respond to several letters from him seeking information and requesting documents violated SCR 20:1.4(a).[6] His statement to the court and to his client that he had attempted to obtain a progress report from the prison constituted a false statement knowingly made to a court, in violation of S CR 20:3.3(a)(1),[7] and dishonesty and misrepresentation, in violation of SCR 20:8.4(c). Attorney Sandy's failure to provide the client's file to successor counsel

---

[6] SCR 20:1.4 provides, in pertinent part:
**Communication**
(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
[7] SCR 20:3.3 provides, in pertinent part:
**Candor toward the tribunal**
(a) A lawyer shall not knowingly:
(1) make a false statement of fact or law to a tribunal;

violated SCR 20:1.16(d).[8] and his directing an obscenity at his client in the presence of others constituted offensive personality, contrary to the Attorney's Oath, SCR 40.15,[9] and a violation of SCR 20:8.4(g).[10]

¶ 17. In another matter, Attorney Sandy filed a notice of intent to pursue postconviction relief on behalf of a client the SPD had appointed him to represent at trial in November, 1994. Attorney Sandy filed no motion or other pleading in the postconviction matter thereafter. The SPD, who had trial transcripts sent to Attorney Sandy in late January, 1995, appointed other counsel to represent the client. Attorney Sandy had not seen the client from the time he was appointed in the appeal until he was removed and did not return the client's calls or respond to several letters from him. He also did not comply with the SPD's requests to forward the transcripts and other documents to successor coun-

---

[8] SCR 20:1.16 provides, in pertinent part:
**Declining or terminating representation**

. . .

(d) Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

[9] SCR 40.15 requires an attorney to take an oath or affirmation, in pertinent part, that the attorney "will abstain from all offensive personality."

[10] SCR 20:8.4 provides, in pertinent part:
**Misconduct**
It is professional misconduct for a lawyer to:

. . .

(g) violate the attorney's oath.

384

sel. Attorney Sandy's failure to meet with the client for some 12 months while appointed to represent him in an appeal and his failure to file a motion for postconviction relief or advise the client that there was no basis to pursue that relief violated SCR 20:1.3. His failure to provide the client's file to successor counsel violated S CR 20:1.16(d).

¶ 18. In each of the matters set forth above, as well as in a sixth matter, Attorney Sandy did not respond or, when he did, did not respond fully to the Board's requests for information concerning grievances it had received. In five of those matters, Attorney Sandy had requested and received an extension of time to respond but made no further contact with the Board. Attorney Sandy also did not respond when the Board sent him a copy of its investigative report, after its numerous letters had gone unanswered. Attorney Sandy's failure to cooperate with the Board's investigation violated SCR 22.07(2) and (3)[11] and 21.03(4).[12]

---

[11] SCR 22.07 provides, in pertinent part:
**Investigation.**

. . .

(2) During the course of an investigation, the administrator or a committee may notify the respondent of the subject being investigated. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct or medical incapacity within 20 days of being served by ordinary mail a request for response to a grievance. The administrator in his or her discretion may allow additional time to respond. Failure to provide information or misrepresentation in a disclosure is misconduct. The administrator or committee may make a further investigation before making a recommendation to the board.

(3) The administrator or committee may compel the respondent to answer questions, furnish documents and present any information deemed relevant to the investigation.

¶ 19. As discipline for that misconduct, the Board and Attorney Sandy stipulated to a two-year suspension of his license to practice law, to run consecutively to the license suspension currently in effect. The stipulation noted that Attorney Sandy has delivered to the Board file materials concerning two client matters considered in this proceeding, as well as those of a third former client. All of those materials have been delivered to successor counsel, and the Board is not aware of any other former clients who have requested and not received their files.

¶ 20. The parties' stipulation of facts concerning Attorney Sandy's professional misconduct in these matters and of conclusions regarding the rules that misconduct violated is accepted. As discipline for that misconduct, we impose the license suspension to which the parties have stipulated.

¶ 21. IT IS ORDERED that the license of Michael B. Sandy to practice law in Wisconsin is suspended for a period of two years, commencing June 3, 1997.

¶ 22. IT IS FURTHER ORDERED that within 60 days of the date of this order Michael B. Sandy pay to the Board of Attorneys Professional Responsibility the

Failure of the respondent to answer questions, furnish documents or present relevant information is misconduct. The administrator or a committee may compel any other person to produce pertinent books, papers and documents under SCR 22.22.

[12] SCR 21.03 provides, in pertinent part:
**General principles.**

. . .

(4) Every attorney shall cooperate with the board and the administrator in the investigation, prosecution and disposition of grievances and complaints filed with or by the board or administrator.

costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Michael B. Sandy to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 23. IT IS FURTHER ORDERED that Michael B. Sandy comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.